IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA           :

v.                                 :  Criminal Case No. DKC 18-483

JONATHAN SPENCER WILLIAMS          :

**MEMORANDUM OPINION**

Jonathan Williams is serving a 57-month sentence imposed in August 2019, for wire fraud in violation of 18 U.S.C. § 1343. The offense conduct concluded in 2015. He has filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release). (ECF No. 56). The Government filed an opposition, (ECF No. 62), and Mr. Williams replied. (ECF No. 64).[1] For the following reasons, the motion for compassionate release will be DENIED.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c) (2018). This general rule is subject to certain exceptions, including the compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence. *See id*. § 3582(c)(1)(A). Under the First Step Act of

---

[1] The motions to seal (ECF Nos. 57, 61, 63, 66) are GRANTED. The personal medical information should remain private, except as recited herein.

2018, the compassionate release provision was modified to allow prisoners to seek a sentencing reduction directly from the court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that:
>
> (1) in any case that—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Judge Hollander described the next step of the analysis as follows:

> Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.
>
> U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):
>
> 1. Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

On March 26, 2020, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, directing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D.N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of

4

> BOP to extend the permissible length of home confinement to any inmate...." *Id.*
> The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19. The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See also* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

*United States v. Gary Kess, Jr.,* No. CR ELH-14-480, 2020 WL 3268093, at *3-4 (D. Md. June 17, 2020) (footnote omitted).

Mr. Williams argues that he meets the "extraordinary and compelling reasons" standard. As an initial matter, Mr. Williams contends that:

> the Court has the authority to make this finding on its own. Judges Bennett, Bredar, Chuang, and Hollander have joined federal judges across the country in holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction.

(ECF No. 58, at 6). Indeed, the government concedes that "[j]udges on this Court have concluded more recently that the Sentencing Commission's policy statement is no longer binding on compassionate release motions under Section 3582." (ECF No. 62, at 11) (citing, e.g., *United States v. Mel*, No. 18-571, 2020 WL 2041674, *3 (D. Md. Apr. 20, 2020) (Chuang, J.)).

Still, the government urges the court to follow the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13. The government would, essentially, have this court limit itself to consideration of whether Mr. Williams 1) suffers from a terminal illness, 2) suffers from a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or 3) is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. (*Id*.) (citing U.S.S.G. § 1B1.13 cmt. n.1 (other grounds omitted)). As the government points out, Mr. Williams is plainly not eligible for compassionate release under the cabined Application Note 1 to § 1B1.13 review. (*Id*. at 13).

Mr. Williams, however, focuses on the fact that numerous courts within and without this district "have recognized that, at least for certain defendants, COVID-19 presents 'extraordinary and compelling reasons' warranting a reduction in sentence under the compassionate release statute." (ECF No. 58, at 8). Indeed, "Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where a defendant had serious medical problems that placed them at high risk for complications if they contracted COVID-19." *United States*

6

*v. Morrison*, No. 19-CR-284-PWG, 2020 WL 3447757, at *4 (D. Md. June 24, 2020). *See also*, *United States v. Gutman*, RDB-19-069, ECF No. 82 at 3-4 (D. Md. May 13, 2020) (finding extraordinary and compelling reasons based on COVID-19 present at FCI Cumberland and high risk underlying medical conditions including multiple sclerosis for which Defendant takes an immunosuppressant and hypertension); *United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *8 (D. Md. May 22, 2020) (finding extraordinary and compelling reasons based in part on presence of COVID-19 at FCI Allenwood, Defendant's facility, and finding that Defendant "suffers from all of the maladies identified by the CDC as conditions that increase the risk of dire complications due to COVID-19" including being nearly 60 years old, having a kidney removed in 2018 and suffering a heart attack in 2019).

With this in mind, Mr. Williams argues that his medical conditions, most notably hypertension and kidney issues, put him at significantly higher risk for COVID-19. He is correct. *See e.g.*, U*nited States v. Patterson*, Crim. No. TJS-20-1078, 2020 WL 2217262, at *3 (D. Md. May 7, 2020) ("There is ample evidence that people with hypertension are more likely to experience complications if they become infected with COVID19"); *United States v. Levy*, No. 16-CR-270 (ARR), 2020 WL 2393837, at *6 (E.D.N.Y. May 12, 2020) ("Heart disease and high blood pressure are risk factors for catching COVID-19 and developing severe

7

illness as a result") (citations omitted).  As the situation regarding COVID-19 is rapidly evolving, Mr. Williams' counsel explained in a recent letter to the court, (ECF No. 67) that:

> the Centers for Disease Control (CDC) has updated its list of COVID-19 risk factors to explicitly include several conditions relevant to Mr. Williams' petition. Specifically, the CDC now advises that "people of any age" who suffer from "chronic kidney disease of any stage" or "obesity (body mass index of 30 or higher)" are "at increased risk of severe illness from COVID-19."  The latter update expands those at risk from obesity from "severe" cases to all cases of obesity.  The CDC also now cautions that while "there is limited data and information about the impact of underlying medical conditions," people with "hypertension or high blood pressure . . . might be at an increased risk for severe illness from COVID-19."  As noted in his earlier filings, Mr. Williams has high blood pressure, chronic kidney disease, and is obese.

(ECF No. 67) (citing CDC, "People of Any Age with Underlying Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed June 26, 2020).

With regard to the argument that the addition of the risks posed by COVID-19 pandemic supports a finding of extraordinary and compelling reasons for release, the Government points out that there currently are no positive COVID-19 cases in the facility where Mr. Williams is housed.  The Government's response was filed on June 11 and, in these rapidly evolving circumstances, might

8

have been filed before the most recent position noted in Judge Hollander's opinion was fully communicated. In any event, the happy fact that there have been no positive tests yet at the facility does not necessarily prevent the finding of extraordinary and compelling reasons for release.

The government also goes into significant detail regarding Mr. Williams' health conditions, arguing that neither his hypertension, nor his reduced left ventricle ejection percentage, nor his kidney problems, nor his obesity qualify him for compassionate release – even taking into account these conditions' effect on COVID-19 susceptibility. (ECF No. 62, at 17-27). Mr. Williams does the same in his response. On certain of these medical issues – as is apparently common with COVID-19 – there are far more open questions than settled ones. For example, the extent to which hypertension exacerbates the risks of COVID-19 is a matter of serious academic dispute, with new information complicating the picture on a weekly basis. Likewise, Mr. Williams' obesity – based on a Body Mass Index ("BMI") of 33 – only meets the CDC's criteria for "increased risk" as of June 25. CDC, "People of Any Age with Underlying Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed June 26, 2020). The same is true for chronic kidney disease, which the CDC only recently deemed an "increased risk" factor. *Id*.

9

More broadly, there is a problem with taking each of these medical conditions in isolation.  There remain questions about how COVID-19 interacts with and is exacerbated by each of the medical conditions Mr. Williams suffers from.  Plaintiff, however, has established that the bulk of more recent authority as to each of these conditions suggests a greater likelihood of severe COVID-19 complications than was perhaps previously understood.  Taken together, Mr. Williams arguably meets the "extraordinary and compelling reasons" standard based on a combination of hypertension, obesity, and chronic kidney disease.

Even with a finding of "extraordinary and compelling reasons," the court must still determine that a sentence reduction would be consistent with Sentencing Commission statements.  18 U.S.C. § 3582(c)(1)(A).  Most importantly, the court must determine whether Mr. Williams would be a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).  The government argues that Mr. Williams "remains a financial danger to the community[.]" (ECF No. 62, at 10).  The government claims that Mr. Williams' prospective employment at an Audi dealership makes it easy "to envision a scenario in which the financial impacts of a COVID-19 recession and his recent criminal history cause the defendant to make an unwise return to fraud, causing severe economic and reputational damage to the Audi dealership and/or causing severe economic harm to customers." (ECF No. 62,

10

at 28-29). In addition, the government relies on the seriousness of the underlying offense and the minimal time thus far spent in incarceration. While this provides some evidence of Mr. Williams' continued risk to the community, it is more aptly addressed to analysis of the 18 U.S.C. § 3553(a) factors.

The court next turns to those factors. Section 3553(a) provides that "[t]he court shall impose a sentence that is sufficient, but not greater than necessary," to comply with the following purposes: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). In making that determination, the court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

The government argues that the § 3553(a) factors counsel against reduction based on the seriousness of his offense conduct, the harm to his victims, and the lack of relevant mitigating factors. (ECF No. 62 at 30-36). All of these facts combined, the government argues, suggest that releasing Mr. Williams less than a year into a 57-month sentence would not sufficiently provide

11

adequate deterrence, promote respect for the law, or provide just punishment.  (*Id*. at 36-37).

Mr. Williams was in fact convicted of highly serious financial crimes.  For six years, Mr. Williams "used his position as a [New York Life insurance] agent to deceive his victim clients so he could steal more than $2 million of the clients' money for his benefit."  (*Id*. at 1-2).  It is impossible to overstate the significance of this criminal activity, its magnitude, audacity, and impact on the victims.  He emphasizes his remorse and commitment not to repeat his crimes, but he does not recognize or address other factors of sentencing.  Promoting respect for law involves demonstrating that there are consequences for criminal behavior, including prison sentences commensurate with the seriousness of the crime.  Due punishment likewise includes the length of a prison term.  Deterrence applies not only to Mr. Williams, but also to others who might be inclined to defraud clients or customers.

Despite relying on the combination of medical conditions that arguably make him more vulnerable to serious complications should he contract COVID-19, Mr. Williams proposes that he be permitted to return to the community and work in a profession that would bring him into frequent contact with members of the public, *i.e.*, as a car salesman.  Either the medical conditions are serious enough to justify isolation from possible infection, or they are

12

not. Despite his proposed employer's efforts to mitigate exposure, it is not possible to conduct car sales completely virtually. Even if it were, however, release to a type of home confinement (which a lot of the population is experiencing) is not warranted at this time. The length of the sentence was carefully considered at the sentencing hearing, was determined to meet the goals of sentencing, and is not overcome by the combination of Mr. Williams' health conditions and the public health emergency. The motion will be DENIED.

                                                                               /s/
                                              DEBORAH K. CHASANOW
                                              United States District Judge